# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ALLEN WOODS, JR., <br>     Plaintiff, <br><br>     v. <br><br> ANDREW SAUL, Commissioner of the <br> Social Security Administration, <br>     Defendant. | ) <br> ) <br> ) <br> )   CAUSE NO.: 2:18-CV-124-JEM <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Allen Woods, Jr., on March 27, 2018, and Plaintiff's Opening Brief [DE 17], filed August 9, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 24, 2018, the Commissioner filed a response, and on October 4, 2018, Plaintiff filed a reply.

## I. Background

On February 28, 2015, Plaintiff filed an application for benefits alleging that he became disabled on November 29, 2014. Plaintiff's application was denied initially and upon consideration. On December 16, 2016, Administrative Law Judge ("ALJ") Diane S. Davis held a video hearing, at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 29, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant's date last insured is December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since November 29, 2014, the alleged onset date.

3. The claimant has the following severe impairments: diabetes mellitus with associated neuropathy, a combination of cervical radiculopathy and degenerative joint disease of the right shoulder, and a heroin use disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that he is further limited to work which avoids concentrated exposure to hazards and can occasionally reach overhead with the dominant right upper extremity, with no limitation involving the left upper extremity.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 9, 1957 and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2014, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual

findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in evaluating the opinion of Plaintiff's treating neurosurgeon, failed to support the RFC with substantial evidence, and erred in assessing Plaintiff's subjective symptom allegations.

Plaintiff argues that the ALJ erred in giving no weight to the opinion of the treating neurosurgeon, Dr. Kaakaji. The Commissioner argues that the ALJ gave good reasons for rejecting the opinion of Dr. Kaakaji, identifying him as Plaintiff's psychiatrist. In November, 2016, Dr. Kaakaji stated that he would support Plaintiff's application for disability, as Plaintiff had multiple conditions "challenging his ability to work." AR 827. Without identifying his role in Plaintiff's treatment or his specialty, the ALJ afforded no weight to Dr. Kaakaji's opinion, on the grounds that

it was formed on the first office visit, is inconsistent with the prior record of Plaintiff's level of functioning, particularly his ability to perform light work with no absences earlier in 2016, and is inconsistent with Dr. Kaakaji's own follow up notes.

"[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). In particular, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'" *Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) (quoting SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)), *see also Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ completely discounted the opinion of Plaintiff's treating neurologist, whose

specialty the ALJ did not identify, in part because of Plaintiff's work history. Instead, the ALJ gave great weight to the opinion of non-examining state agency physicians who offered their opinions on June 3, 2015, and July 15, 2015, without access to information about Plaintiff's shoulder impairments.

ALJs are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); see also *Vanprooyen v. Berryhill*, 864 F.3d 567, 572–73 (7th Cir. 2017) (finding error where "without any logical explanation, the administrative law judge gave substantial weight to the opinions of consulting physicians who had never examined [the plaintiff], saying only that they had provided "a good synopsis of the evidence" and that "their opinions are consistent with the overall record"). In addition, "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); see also *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (citing *Goins,* 764 F.3d at 680; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)) (holding that the ALJ's error in interpreting MRI results could have been avoided by seeking an updated medical opinion).

In this case, Plaintiff's medical records post-state agency opinions contain significant, new developments that could have reasonably changed the state agency physicians' opinions. In particular, notable developments are reflected in the records of Plaintiff's treating neurologist, as described above, including the results of November 25, 2016 MRI showing a mass consistent with a pituitary tumor, a May 12, 2016 shoulder x-ray showing degenerative arthropathy at the

acromioclavicular joint "with inferior spurring of the acromion which can predispose to impingement," AR 755, a July 8, 2016, MRI showing a "partial tear and/or tendinosis of the distal supraspinatus tendon with no full-thickness tear," as well as degenerative changes "of the glenohumeral and AC joints." AR 813, and a later MRI showing right-sided foraminal stenosis of the cervical spine at C4-C5 and C5-C6. AR 826. Neither of the state agency physicians examined Plaintiff, and neither of them had the opportunity to review medical evidence relating to Plaintiff's shoulder. No other physician opined that Plaintiff could perform medium work, and Dr. Kaakaji was the only physician to offer an opinion after Plaintiff's shoulder pain started. No doctor opined that Plaintiff would be able to reach overhead occasionally due to his shoulder impairment.

The ALJ is not qualified to interpret Plaintiff's MRIs and x-rays in determining that Plaintiff could reach overhead occasionally and perform medium work. The Seventh Circuit has made clear that "ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Moreno*, 882 F.3d at 729 (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Stage*, 812 F.3d at 1125 (finding that the ALJ erred by evaluating the significance of a subsequent treating physician's report that contained significant, new, and potentially decisive findings without the input of a medical expert and instead relying on an outdated assessment); *Goins,* 764 F.3d at 680 (criticizing the ALJ for "playing doctor" by summarizing the results of an MRI without input from an expert)). Dr. Kaakaji's opinion/treatment note discussed Plaintiff's second MRI, yet the ALJ gave his opinion and treatment note little weight, relying instead on earlier non-examining physician opinions that did not take Plaintiff's shoulder injury into account. The ALJ impermissibly evaluated the MRIs and x-rays on her own in determining Plaintiff's RFC.

Further adding to the Court's concern that the ALJ substituted her own medical judgment

for those of physicians is her failure to account for Plaintiff's use of an ambulatory device. The ALJ noted that Plaintiff was prescribed a cane, but did not incorporate the need for an assistive device in the RFC because "the evidence discussed above" – almost all of which pre-dated the cane prescription – "does not support the assertion that use of such device is medically necessary." Although Plaintiff may not need to use an assistive device at all times, the ALJ completely and explicitly disregarded his use of a cane *prescribed by a medical professional* based on her own medical judgment and did not include even occasional use of an assistive device in the RFC. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (warning that ALJs should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong") (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion").

The ALJ also stated that she did not give weight to Dr. Kaakaji's opinion because of Plaintiff's successful ability to work without absences in 2016. This is a misstatement of the record. Plaintiff had two unsuccessful work attempts in 2016. Plaintiff stated he was let go from the position he held as a cookie inspector from June 16, 2016, through August 3, 2016, because he was not consistent and could not keep up, despite the fact that he did no lifting or carrying while on the job, and he could stand or sit as he chose. He also stated that his right shoulder was bothering him during this job, and so he was doing much of the work with his left hand only. Plaintiff then obtained a job placing reflectors on portions of car bumpers as they came down an assembly line, which he held from August 29, 2016, through October 3, 2016. Plaintiff testified that he could not keep up in this job, could not lift the pieces to place in machines, and could not stand for the amount of time required. AR 37. Although Plaintiff may have had no absences during his time at the jobs, his tenure was extremely brief and he was let go because he was unable to work at the level required for either

job. The ALJ grossly mischaracterized the record in stating that Plaintiff was capable of performing light work in 2016 when Plaintiff only had unsuccessful sedentary work attempts. Not only is this an erroneous reason for discounting the opinion of Plaintiff's treating neurologist, but to the extent that the ALJ concluded that Plaintiff was not disabled because he tried to work, that conclusion is also troubling. As the Seventh Circuit Court of Appeals has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."); *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate person might force herself to work – or … certify that she is able to work – but that does not necessarily mean she is not disabled."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working.").

The ALJ mischaracterized evidence in her analysis of Dr. Kaakaji's opinion and erred in failing to submit new evidence to a medical expert. This case is being remanded for the ALJ to conduct a thorough analysis of the treating neurosurgeon's opinion as well as to obtain updated medical opinions for the new evidence regarding Plaintiff's shoulder. The Commissioner is also reminded of the requirement to assess Plaintiff's subjective allegations in accordance with SSR 16-3p and of the need to build a logical bridge between the evidence in the record and the ultimate conclusions, whatever those might be. *See Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to

expand the record so that he may build a 'logical bridge' between the evidence and his conclusion.").

**IV. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Plaintiff's Opening Brief [DE 17], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 5th day of August, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record